NEW JERSEY SUPREME COURT, PASSAIC COUNTY.

BEL-ROSE SILK COMPANY, INCORPORATED, A CORPORATION OF NEW JERSEY, PLAINTIFF, v. THOMAS D. TOY, WILLIAM D. GROTHMAN AND GEORGE GRECKE, CO-PARTNERS, DOING BUSINESS UNDER THE FIRM NAME AND STYLE OF THOMAS D. TOY & COMPANY, DEFENDANTS.

For the plaintiff, *Ward & McGinnis.*

For the defendants, *Evans, Smith & Evans.*

PASSAIC COUNTY CIRCUIT COURT.

MAUDE M. WALSH, ADMINISTRATRIX WITH THE WILL ANNEXED OF HARRY A. WALSH, DECEASED, PLAINTIFF, v. BEL-ROSE SILK COMPANY, INCORPORATED, A CORPORATION OF NEW JERSEY, DEFENDANT.

Decided April 29, 1937.

For the plaintiff, *Archibald Kreiger*.

For the defendant, *Ward & McGinnis*.

WOLBER, C. C. J.   This is an application made on behalf of Bel-Rose Silk Company, Incorporated, plaintiff in the Supreme Court cause and defendant in the Circuit Court cause, to have the two cases tried together, on the grounds that the issues in both cases and the evidence in support thereof are and will be of necessity substantially the same, the causes of action both arising out of the same transaction, or series of transactions, and that all of the parties in any way connected or associated with the first case are similarly associated and connected with the second case.

The first case is a suit commenced by Bel-Rose Silk Company, Incorporated, against Thomas D. Toy & Company to recover damages totaling approximately $37,500 for breach of warranty arising out of an agreement with the defendant partnership for the sale and delivery of cotton yarns of a certain type and quality and similar to a sample submitted. That action is based upon the theory that Harry A. Walsh, now deceased, was the agent of the defendant partnership, carried on negotiations for them and ultimately consummated the transaction whereby the cotton yarn was sold and delivered by the defendant partnership to the plaintiff corporation.

In the Circuit Court suit, Maude M. Walsh, widow of said Harry A. Walsh, as administratrix *cum testamento annexo* of Harry A. Walsh, deceased, sues the Bel-Rose Silk Company, Incorporated, on a book account for approximately $4,000, alleging that her late husband was not the agent, but first bought the yarn in question from Thomas D. Toy & Company, and then as principal sold it to Bel-Rose Silk Company, Incorporated, and Walsh, not having been paid in full for the cotton yarn, his wife, as administratrix *cum testamento annexo,* now sues Bel-Rose Silk Company, Incorporated, for the balance of the purchase price of the yarn.

The Supreme Court suit was commenced on January 30th, 1936, and the Circuit Court suit was commenced on June 17th, 1936.

The application presents an opportunity for a discussion of the confusion which has arisen in the cases by the use of the words, "consolidation of actions," when it was sought to have actions tried together. Mr. Justice Scudder in *Lee* v. *Township of Kearny* (*Supreme Court,* 1880), 42 *N. J. L.* 543, had this to say, where a plaintiff brought thirteen separate actions against the township on thirteen improvement certificates for a like amount, which were all due when the suits were commenced. Defendant before pleading obtained a rule to consolidate the thirteen suits; then filed one plea of the general issue; issue was joined, the case was tried before a jury and resulted in a verdict for the plaintiff for the aggregate amount of the thirteen certificates and interest. This verdict was divided into thirteen separate amounts, apportioned to each suit, *posteas* drawn and signed, costs taxed, and judgments entered in all:

"This was a clear case for the interposition of the court, to consolidate unnecessary actions, before issue joined, under the Practice act. *Rev.* 867, § 121. After the rule to consolidate had been granted, there was no authority to proceed in any other form, and the case was tried as if there had been an actual consolidation in the declaration, with one plea, and a single issue. The objects of the rule in securing a single trial, and preventing the accumulation of costs in thirteen suits, would be frustrated, if this falsification of the records was permitted to stand. So long as the rule to consolidate remained, the plaintiff was bound to conform the action to its requirement.

"The error has doubtless arisen by a misapplication of what was called the consolidation rule in the courts of England, introduced in the time of Lord Mansfield, for the stay of proceedings in actions against several writers on the same policy of insurance. 1 *Tidd's Prac.* 614; 1 *Abb. Law Dic.* 268.

"The two methods of procedure are stated and distinguished in 3 *Chit. Gen. Prac.* 642, § 27, the one to consoli-

date several actions or demands into one, where the same plaintiff has several claims against the same defendant, all complete at the same time, or at least before he has issued any writ; the other where several actions have been brought on separate causes of action, accruing at different times, and the court, on terms, pronounced a rule suspending the trial of more than one action. The learned author says that the term 'consolidation rule' is, though improperly, used as applicable to both cases. The consolidation rule suspending the proceedings in several actions on the same policy, bond, &c., against several separate defendants, until one action has been tried, is distinct from those last above mentioned, and is also improperly called a consolidation rule; it is more appropriately styled a stay of proceedings until one action has been tried."

Mr. Justice Scudder, on page 545, further said:

"In this court, in the case of *Den* v. *Kimble* (*Supreme Court*, 1827, Ewing, C. J.), 9 *N. J. L.* 335, this subject is examined, and the two modes in which the effects of consolidation are attained, are stated to be—the one where the actions are actually consolidated, and the other, which may be called a *quasi* consolidation, where one action is tried and the rest are to abide the event.

"The latter is usually adopted by consent; the former is ordered by the court, to prevent oppression and the accumulation of costs."

Mr. Justice Black in *Metropolitan Casualty Insurance Co.* v. *Lehigh Valley Railroad* (*Court of Errors and Appeals,* 1919), 94 *N. J. L.* 236; 109 *Atl. Rep.* 743, which involved an order of consolidation made by the trial judge in connection with twelve cases against the same defendant by twelve different plaintiffs, referred to the old common law authorities, but said (at *p.* 238) : "What the common law is, however, needs no discussion." He referred to the case of *Defiance Fruit Co.* v. *Fox* (*Court of Errors and Appeals,* 1908, Pitney, C.), 76 *N. J. L.* 482; 70 *Atl. Rep.* 460, where our Court of Errors and Appeals sustained an order consolidating two suits for trespass to lands lying in different counties, which were

really based upon one cause of action, and predicated his views sustaining the order of consolidation upon the liberal rule contained in paragraph 1 of the Practice act of 1912 and the provisions of paragraphs 4 and 6 of that act. *Cum. Supp. Comp. Stat.* 1911-1924, §§ 163-277, 280, 282.

Our 1903 Practice act by section 164, page 581 (3 *Comp. Stat., p.* 4104), provides that if several actions between the same parties involving same or similar matters of controversy, or cross-actions between the same parties with respect to the same transaction, are triable in the same manner and may be conveniently tried together, are pending in the same court, the judge may, on application of either party, order that such actions be consolidated for the purpose of trial. It will be noted that this provision is limited to actions between the same parties in the same court, and could not therefore apply to the instant situation, where one action is in the Supreme Court and the other in the Circuit Court. The parties here are not the same in each action, although Bel-Rose is plaintiff in one and defendant in the other.

It is undoubtedly true that the Practice act (1912) liberalized the practice of our courts of law, and sections 4 to 12, inclusive, of the 1912 Practice act (*Cum. Supp. Comp. Stat.* 1911-1924, §§ 163-280 to 288) and Supreme Court rules 16 to 18, inclusive, promulgated in pursuance thereof should be examined for the purpose of testing out plaintiff's right to have the actions tried together. Rule 18 of the Supreme Court expressly provides that persons may be joined as defendants against whom the right to relief is alleged to exist in the alternative, although a right to relief against one may be inconsistent with a right to relief against the other.

Assuming that the plaintiff has shown that the issues in controversy in both actions involve the same transaction and would therefore require duplication of the same proof at the trial of both suits, I cannot disregard the fact that no matter how much I would feel that the two suits should be tried together, there is presented the more serious question of my power as Circuit Court judge, either under the statute or acting as Supreme Court commissioner under the rules, to issue

an order for the trial of a Supreme Court issue and a Circuit Court issue together.

In *McConnell* v. *Alpha Portland Cement Co.* (*Court of Errors and Appeals,* 1907, Fort, J.), 74 *N. J. L.* 727; 67 *Atl. Rep.* 346, where a judgment was entered in the Supreme Court upon the order of a Circuit Court judge, it was held that there is no power in a Circuit Court judge to make an order for the entry of a judgment in the Supreme Court.

In *Hubbard* v. *Montross Metal Shingle Co.* (*Supreme Court,* 1909, Minturn, J.), 79 *N. J. L.* 208; 74 *Atl. Rep.* 254, where the Circuit Court judge granted plaintiff's motion to strike out frivolous pleas, and the trial then proceeded to judgment against the defendants, it was held that the powers of the Circuit Court judge were limited to the trial of the "issues joined in the Supreme Court, which may be referred to him by the justice of the Supreme Court holding the Circuit, and in relation to the trial of such issues the same judge shall have the power to amend," &c. *Pamph. L.* 1906, *p.* 209.

In *Dayton* v. *Boettner* (*Court of Errors and Appeals,* 1911, Trenchard, J.), 82 *N. J. L.* 421; 81 *Atl. Rep.* 726, it was held that the power to strike out a pleading in an action in the Supreme Court is lodged solely in that court, or in a justice thereof, and is not possessed by a Circuit Court judge to whom the cause has been referred for trial pursuant to chapter 118 of *Pamph. L.* 1906, *p.* 209; 2 *Comp. Stat.,* *p.* 1712.

It is interesting to see how our courts further liberalized the practice of law subsequent to the adoption of the 1912 Practice act. In the case of *Koppelon* v. *W. M. Ritter Flooring Corp.* (*Court of Errors and Appeals,* 1921, Trenchard, J.), 97 *N. J. L.* 200, the action was a Supreme Court issue and had been referred by a Supreme Court justice to the Circuit Court judge for trial. At the trial the judge struck out the "second separate defense" upon the ground that it did not constitute a defense to the cause of action stated in the complaint, that point having been made in the plaintiff's answering pleading. Defendant contended that the Circuit

Court judge had no power to strike out the defense, and the Court of Errors and Appeals held that he had, although it was true that prior to the enactment of the Practice act of 1912, he had no such power. It held that the legislature, by rule 26 of the Practice act of 1912 (now rule No. 40 of the Supreme Court), authorized the procedure followed by the court and counsel in that case.

In *Milberg* v. *Keulhe* (*Court of Errors and Appeals*, 1923, Trenchard, J.), 98 *N. J. L.* 779; 121 *Atl. Rep.* 713, where a Circuit Court judge as Supreme Court Commissioner struck out the answer in an action of ejectment, it was held that a Supreme Court commissioner had no power to make an order for summary judgment in an action in the Supreme Court, and relied upon rule No. 84 of the Supreme Court that no summary judgment shall be entered except by virtue of an order of the court or a justice at chambers.

At the time of this decision, Supreme Court rule No. 94 provided that a Supreme Court commissioner might make the same order as the Supreme Court with respect to objections to pleadings (other than those provided for in rules 40 and 56), amendments thereof, and leave for additional pleadings. Of course, rule 94 has since been enlarged (amended January, 1934) to cover objections to pleadings, amendments thereof, striking out of pleadings, and leave for additional pleadings.

In *Hawthorne* v. *Williams* (*Supreme Court*, 1937, *per curiam*), 15 *N. J. Mis. R.* 330; 191 *Atl. Rep.* 287, it was held that a Circuit Court judge was without jurisdiction to deny a motion to quash a writ of attachment issued in a Supreme Court action.

Plaintiff's application, assuming I had the power as a Circuit Court judge, under the statute or the Supreme Court rules, to order the trial of both suits together, would call upon me to determine whether they should be tried as Supreme Court issues or as Circuit Court issues. I am unable to find any power in me as a Circuit Court judge to issue any order providing for the trial together of a Supreme Court suit and a Circuit Court suit, notwithstanding there may be

sound reasons for doing so in order speedily and finally to determine legal controversies according to the substantive rights of the parties. I have no power to transfer the Circuit Court suit to the Supreme Court, nor have I the power to transfer the Supreme Court suit to the Circuit Court, nor can I stay the trial of the Supreme Court suit until the Circuit Court suit has been disposed of. The power resides elsewhere.

Plaintiff's application will therefore be denied, without costs.